# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

LARRY DAVID JOHNSON,

        Petitioner,

v.

        Case No. 3:17-cv-731-J-32JRK

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

        Respondents.

_____

## ORDER

## I.    Status

Petitioner, an inmate of the Florida penal system, initiated this case by filing a pro se Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2254. Doc. 1. He is challenging a state court (Duval County, Florida) judgment of conviction for trafficking 400 grams or more but less than 150 kilograms of cocaine. Id. He is currently serving a twenty-year term of incarceration with a fifteen-year minimum mandatory. Id. Respondents have responded. See Doc. 13; Response.[1] Petitioner filed a Reply. See Doc. 14. This case is ripe for review.

---

[1] Attached to the Response are numerous exhibits. See Docs. 13-1 through 13-8. The Court cites to the exhibits as "Resp. Ex."

## II.   **Governing Legal Principles**

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal habeas corpus petition. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016), cert. denied, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the petitioner's claims on the merits. See Marshall v. Sec'y Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue an opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation,

> the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning. But the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or

> argued to the state supreme court or obvious in the record it reviewed.

<u>Wilson v. Sellers</u>, 138 S. Ct. 1188, 1192 (2018).

When a state court has adjudicated a petitioner's claims on the merits, a federal court cannot grant habeas relief unless the state court's adjudication of the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(1), (2). A state court's factual findings are "presumed to be correct" unless rebutted "by clear and convincing evidence." <u>Id.</u> § 2254(e)(1).

> AEDPA "imposes a highly deferential standard for evaluating state court rulings" and "demands that state-court decisions be given the benefit of the doubt." <u>Renico v. Lett</u>, 559 U.S. 766, 773 (2010) (internal quotation marks omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." <u>Harrington v. Richter</u>, 562 U.S. 86, 101 (2011) (internal quotation marks omitted). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." <u>Id.</u> [at 102] (citing <u>Lockyer v. Andrade</u>, 538 U.S. 63, 75 (2003)). The Supreme Court has repeatedly instructed lower federal courts that an unreasonable application of law requires more than mere error or even clear error. <u>See, e.g.</u>, <u>Mitchell v. Esparza</u>, 540 U.S. 12, 18 (2003); <u>Lockyer</u>, 538 U.S. at 75 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear

> error) with unreasonableness."); <u>Williams v. Taylor</u>,
> 529 U.S. 362, 410 (2000) ("[A]n unreasonable
> application of federal law is different from an incorrect
> application of federal law.").

<u>Bishop v. Warden, GDCP</u>, 726 F.3d 1243, 1253-54 (11th Cir. 2013) (internal citations modified).

## B. Ineffective Assistance of Appellate Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003) (per curiam) (citing <u>Wiggins v. Smith</u>, 539 U.S. 510, 521 (2003), and <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984)). To establish ineffective assistance, a person must show that: (1) counsel's performance was outside the wide range of reasonable, professional assistance; and (2) counsel's deficient performance prejudiced the challenger in that there is a reasonable probability that the outcome of the proceeding would have been different absent counsel's deficient performance. <u>Strickland</u>, 466 U.S. at 687.

This two-part <u>Strickland</u> standard also governs a claim of ineffective assistance of appellate counsel. <u>Overstreet v. Warden</u>, 811 F.3d 1283, 1287 (11th Cir. 2016).

When considering deficient performance by appellate counsel,

> a court must presume counsel's performance was "within the wide range of reasonable professional assistance." Id. at 689, 104 S. Ct. 2052. Appellate counsel has no duty to raise every non-frivolous issue and may reasonably weed out weaker (albeit meritorious) arguments. See Philmore v. McNeil, 575 F.3d 1251, 1264 (11th Cir. 2009). "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." Smith v. Robbins, 528 U.S. 259, 288 (2000) (quoting Gray v. Greer, 800 F.2d 644, 646 (7th Cir.1986)); see also Burger v. Kemp, 483 U.S. 776, 784 (1987) (finding no ineffective assistance of counsel when the failure to raise a particular issue had "a sound strategic basis").

Id.; see also Owen v. Sec'y, Dep't of Corr., 568 F.3d 894, 915 (11th Cir. 2009) ("failing to raise or adequately pursue [meritless issues on appeal] cannot constitute ineffective assistance of counsel").

To satisfy the prejudice prong of an ineffective assistance of appellate counsel claim, a petitioner must show a reasonable probability that "but for the deficient performance, the outcome of the appeal would have been different." Black v. United States, 373 F.3d 1140, 1142 (11th Cir. 2004); see also Philmore v. McNeil, 575 F.3d 1251, 1264-65 (11th Cir. 2009) (prejudice results only if "the neglected claim would have a reasonable probability of success on appeal"). Also,

> [a] reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694, 104 S. Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id., at 693, 104 S. Ct. 2052. Counsel's

> errors must be "so serious as to deprive the defendant
> of a fair trial, a trial whose result is reliable." Id., at
> 687, 104 S. Ct. 2052.

Richter, 562 U.S. at 104. As such, "[a]ppellate counsel might fail to identify a mediocre or obscure basis for reversal without being ineffective under Strickland." Overstreet, 811 F.3d at 1287 (citation omitted).

For both claims of ineffective assistance of trial counsel and appellate counsel, there is no "iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward v. Hall, 592 F.3d 1144, 1163 (11th Cir. 2010). Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." 466 U.S. at 697.

"The question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," then a federal court may not disturb a state-court decision denying

the claim. <u>Richter</u>, 562 U.S. at 105.  As such, "[s]urmounting <u>Strickland</u>'s high bar is never an easy task." <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371 (2010). "Reviewing courts apply a 'strong presumption' that counsel's representation was 'within the wide range of reasonable professional assistance.'" <u>Daniel v. Comm'r, Ala. Dep't of Corr.</u>, 822 F.3d 1248, 1262 (11th Cir. 2016) (quoting <u>Strickland</u>, 466 U.S. at 689). "When this presumption is combined with § 2254(d), the result is double deference to the state court ruling on counsel's performance." <u>Id.</u> (citing <u>Richter</u>, 562 U.S. at 105); <u>see also</u> <u>Evans v. Sec'y, Dep't of Corr.</u>, 703 F.3d 1316, 1333-35 (11th Cir. 2013) (en banc) (Jordan, J., concurring); <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004).

## III.   **Petitioner's Claims and Analysis**

### A. Ground One

Petitioner argues that upon his unequivocal request to discharge his court-appointed counsel and proceed pro se, the trial court erred in failing to conduct inquiries pursuant to <u>Nelson v. State</u>, 274 So. 2d 256 (Fla. 4th DCA 1973), and <u>Faretta v. California</u>, 422 U.S. 806 (1975). Doc. 1 at 4-9. According to Petitioner, the trial court's error deprived him of his Sixth Amendment and due process rights. <u>Id.</u>

To add context to this allegation, the Court provides a brief summary of the relevant procedural history. On March 15, 2010, the state charged Petitioner by Information with one count of trafficking in cocaine. Resp. Ex. A

at 7. Thereafter, Jonathan Sacks, Esquire, was appointed to represent Petitioner. See State v. Johnson, 16-2010-CF-002093 (Fla. 4th Cir. Ct.). On September 29, 2010, Mr. Sacks filed a motion to withdraw as counsel,[2] and that same day, the trial court granted Mr. Sacks' request, see Resp. Ex. A at 52, and appointed Sandra Suarez, Esquire, to represent Petitioner, see Johnson, 16-2010-CF-002093.

Over the next year and a half, Ms. Suarez actively petitioned the trial court to compel the state to reveal the identities of the two confidential informants involved in Petitioner's criminal investigation.[3] See Resp. Ex. A 108. However, after an in-camera hearing in which the trial court considered testimony from the confidential informants, on March 7, 2012, the trial court denied Petitioner's request to compel the disclosure of the informants' identities. Id.; see also Resp. Ex. C at 405. On or about April 30, 2012, Petitioner filed a pro se "Request for Nelson He[a]ring." Resp. Ex. A at 158. In the request, Petitioner argued as follows:

> (1) The office of the public defender was appointed to represent the defendant in the above mentioned criminal proceedings.

---

[2] It is unclear why Mr. Sacks withdrew from his representation of Petitioner.

[3] Delay in Petitioner's state court prosecution could have also been attributed to his pending federal criminal case in the Southern District of Georgia for a 2007 charge of distribution of cocaine base. Resp. Ex. A at 122; Resp. Ex. C at 438.

(2) On February 24, 2010 the defendant was charged with trafficking in cocaine.

(3) The public defender assigned to represent the defendant is Sandra Suarez. The P.D. has failed to properly prepare defendant's case for trial, and has failed to file appropriate pre-trial motions. Failed to adopt defendant's motion. Counsel failed [to] properly assist in the defendant's in camera hearing. Counsel failed to appeal the court's order denying the in camera hearing.

(4) The defendant is being denied effective assistance of counsel, contrary to his 6th Amendment right to counsel.

(5) There is currently a conflict of interest between the defendant, and the office of the public defender because of the assigned counsel[']s ineffectiveness.

Based upon the allegations set forth in the above-mentioned, the defendant prays this court grant this motion, which is being submitted in good faith.

1) The Defendant prays that no further actions will be taken in this case, until a hearing is held pursuant to Nelson supra . . . to evaluate counsel's competency.

2) In [the] alternative, allow the defendant to proceed pro/se [sic]

3) Any other relief the court deems just and fair as to hybrid representation. . . .

Id. at 158-59. The same day that Petitioner's request was filed, the trial court

held a pretrial status conference in which Ms. Suarez presented an ore tenus

motion for the trial court to reconsider its denial of the motion to compel. Resp. Ex. G at 17. Ms. Suarez made her request for reconsideration before Petitioner could be escorted to the courtroom, and once he was finally present, the trial court granted the request to reconsider the motion and continued the case. Id. at 17-19. Petitioner's request for a Nelson or Faretta hearing was not mentioned or discussed during the April 30, 2020, status conference.[4] Id.

At the next pretrial conference, on June 25, 2012, Ms. Suarez advised the trial court that Petitioner had filed a pro se request for a Nelson inquiry and that the trial court needed to determine whether he wanted to represent himself. Resp. Ex. I at 13. Ms. Suarez also reminded the trial court about her prior request to reconsider its denial of her motion to compel the identities of the confidential informants. Id. The trial court promptly advised Ms. Suarez that the case was passed until July 23, 2012, and that it would not consider the Nelson request until it resolved the issues regarding the in-camera evaluation

---

[4] It is unclear if the parties and the trial court were aware of Petitioner's pro se written request for a Nelson or Faretta inquiry during the April 30, 2012, status hearing, because the request appears to have been filed after the status conference. See Johnson, 16-2010-CF-002093.

of the confidential informants.[5] Id. at 14-15. Thereafter, the trial court held pretrial status conferences on July 23, 2012, Resp. Ex. J at 4-7; August 7, 2012, see id. at 9-15; September 4, 2012, see id. at 17-24; and October 9, 2012, see id. at 26-32. During these pretrial conferences, neither Petitioner nor Ms. Suarez mentioned Petitioner's pending Nelson or Faretta request.

The state ultimately withdrew its objection to Petitioner's motion to compel and listed the informants' names in discovery, allowing Ms. Suarez to take their depositions. See Resp. Ex. J at 11. Thereafter, Ms. Suarez filed a motion to dismiss. On November 19, 2012, the trial court conducted a hearing on the motion to dismiss, during which Ms. Suarez advised the trial court that the arguments in the motion were actually prepared by Petitioner and that she "adopted most of it . . . and [] included the case law. . . ." Id. at 39. The trial court denied the motion. Id. at 45. Again, Petitioner and Ms. Suarez did not remind the trial court of Petitioner's pending Nelson or Faretta request at the motion hearing. Id.

---

[5] Apparently when the trial court conducted its in-camera hearing, a court reporter was not present to transcribe the proceeding. Resp. Ex. I at 12. The trial court's confusion regarding the in-camera issue also may have been attributed to the extended pendency of the pretrial proceedings and that three different trial court judges presided over the case during its pretrial stage. See generally Johnson, 16-2010-CF-002093. Incidentally, by the time the case went to trial, a fourth trial court judge was assigned to the case. Resp. Exs. C at 416; D at 1.

On January 17, 2013, Ms. Suarez filed a demand for speedy trial, and jury selection began on January 22, 2013. Resp. Ex. E at 3. Immediately before the jury pool was brought into the courtroom, while Petitioner was present in the courtroom with counsel, the trial court asked whether there were any preliminary matters that needed to be heard, to which both parties replied in the negative. Id. The trial court on two more occasions asked if the parties were ready to proceed, and in response to each request, Ms. Suarez advised that she was ready. Id. at 5. Jury selection began, and after an outburst from one of the potential jurors, Ms. Suarez successfully moved to strike the jury panel. Id. at 14-15. Before the new jury panel was brought into the courtroom, the trial court again asked the parties whether they were ready to proceed, and Ms. Suarez said yes. Id. at 16. No one mentioned Petitioner's prior Nelson or Faretta request.

Once the jury was selected, the trial court had the following exchange with Petitioner:

> THE COURT: Before we bring the jury in, Mr. Johnson, I see that you've been consulting with your attorney throughout this process. Are you satisfied with the jury that remains and that's been selected for your case?
>
> THE DEFENDANT: Yes, ma'am.

Resp. Ex. E at 92. Petitioner again failed to notify the Court of his pending Nelson or Faretta request. Further, on January 24, 2013, prior to the parties'

opening statements, the trial court asked if "there [were] any other motions in limine or pretrial motions that haven't been filed or need to be heard?" Id. at 106. In response, Ms. Suarez successfully argued two motions in limine and successfully moved the trial court to take judicial notice of various matters. Id. at 106-13. Neither Petitioner nor Ms. Suarez mentioned that Petitioner's pro se Nelson or Faretta request was still pending. Id. After the state rested its case-in-chief, the trial court conducted a colloquy with Petitioner regarding his decision not to testify. Id. at 296-98. At no time during the colloquy did Petitioner request a Nelson or Faretta inquiry. Id. The jury found Petitioner guilty, Resp. Ex. F 377-78, and the trial court subsequently sentenced him to a twenty-year term of incarceration with a fifteen-year minimum mandatory, Resp. Ex. C at 463. Again, at sentencing, Petitioner addressed the trial court, but he never mentioned a request to proceed pro se or a Nelson or Faretta inquiry. Id. at 460-61.

Petitioner, with the help of appellate counsel, sought a direct appeal. As his sole claim for relief, Petitioner argued that "the trial court erred by not conducting any inquiry when [Petitioner] requested that his appointed counsel be dismissed or that, in the alternative, he be allowed to represent himself." Resp. Ex. K at 13. The state filed an answer brief arguing that the trial court did not err in failing to conduct a Nelson or Faretta hearing, because: (a) Petitioner's pro se motion failed to make a clear and unequivocal request to

discharge counsel and proceed pro se; (b) Petitioner waived his pro se request to proceed pro se by proceeding to trial with the same counsel and never requesting that the motion be heard, even when given multiple opportunities to request a hearing; and (c) any error in failing to conduct an inquiry was harmless, considering the overwhelming evidence of guilt and the lack of record evidence supporting Petitioner's claim that trial counsel was ineffective. See generally Resp. Ex. L. The First District Court of Appeal per curiam affirmed Petitioner's judgment and sentence without a written opinion. Resp. Ex. M. Petitioner now seeks review of the state court's adjudication of this issue during his direct appeal.

### i. Nelson

Respondents argue that Petitioner's claim that the trial court failed to conduct a Nelson hearing is an issue of state law, and thus, not cognizable on federal habeas review. Resp. at 15. The Court agrees. In Nelson, Florida's Fourth District Court of Appeal held that if an indigent defendant expresses a desire to discharge court-appointed counsel because of counsel's ineffectiveness, the trial court must hold a hearing to determine whether there is reasonable cause to believe that the court-appointed counsel is not rendering effective assistance to the defendant. Nelson, 274 So. 2d at 256; see also Glover v. State, 226 So. 3d 795, 807 (Fla. 2017) (discussing Nelson hearings); Hardwick v. State, 521 So. 2d 1071, 1074-75 (Fla. 1988) (approving and adopting Nelson hearings).

If the trial court finds that counsel is acting ineffectively, the trial judge will appoint substitute counsel. Id.

The United States Supreme Court has not established a procedure for when a represented indigent criminal defendant does not want to proceed pro se, but instead wants another court-appointed lawyer because his current lawyer is allegedly ineffective. See, e.g., United States v. Garey, 540 F.3d 1253, 1262-66 (11th Cir. 2008) ("Although the Sixth Amendment guarantees counsel, it does not grant defendants the unqualified right to counsel of their choice. An indigent criminal defendant 'does not have a right to have a particular lawyer represent him, nor to demand a different appointed lawyer except for good cause.'" (quoting Thomas v. Wainwright, 767 F.2d 738, 742 (11th Cir. 1985)). This Court will not reexamine state court determinations on issues of state law. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Since Petitioner's claim regarding a Nelson inquiry presents a state law claim concerning the trial court's failure to follow the procedures of a state law requirement, Petitioner is not entitled to federal habeas relief on that claim, as there has been no breach of a federal constitutional mandate. Ortiz v. McNeil, No. 3:09-cv-563-J-12TEM, 2010 WL 4983599, at *5 (M.D. Fla. Dec. 2, 2010) ("Any complaint about the lack of a proper Nelson inquiry raises an issue of state law that is not cognizable in this proceeding.").

ii.     Faretta

In contrast, Petitioner's claim that the state court erred in failing to conduct a Faretta inquiry is cognizable on federal habeas review. As such, to the extent that the First DCA found on the merits that the trial court did not violate the purview of Faretta, the Court will address the issue in accordance with the deferential standard for federal court review of state court adjudications.

The obligation to conduct a Faretta hearing, at which the trial court advises a defendant of the dangers and disadvantages of self-representation, is triggered by the defendant's "clear and unequivocal" assertion of a desire to represent himself. See Cross v. United States, 893 F.2d 1287, 1290 (11th Cir. 1990) ("In recognition of the thin line that a district court must traverse in evaluating demands to proceed pro se, and the knowledge that shrewd litigants can exploit this difficult constitutional area by making ambiguous self-representation claims to inject error into the record, this Court has required an individual to clearly and unequivocally assert the desire to represent himself."); Dorman v. Wainwright, 798 F.2d 1358, 1366 (11th Cir. 1986) ("Insofar as the desire to proceed pro se is concerned, [a] petitioner must do no more than state his request, either orally or in writing, unambiguously to the court so that no reasonable person can say that the request [to proceed pro se] was not made."). The only record evidence supporting Petitioner's assertion that he made a

request for a <u>Faretta</u> inquiry is Petitioner's pro se motion, in which he asks the trial court to evaluate trial counsel's competency or, "in the alternative, allow the defendant to proceed pro [ ] se." Resp. Ex. A at 159. This conditional request is not sufficiently clear and unambiguous as to mandate the purviews of <u>Faretta</u>.

Further, even assuming this singular statement should have prompted the trial court to conduct a <u>Faretta</u> inquiry, "[a] defendant can waive his <u>Faretta</u> rights." <u>McKaskle v. Wiggins</u>, 465 U.S. 168, 182 (1984). Notably, "[e]ven if defendant requests to represent himself, . . . the right may be waived through defendant's subsequent conduct indicating he is vacillating on the issue or has abandoned his request all together." <u>Brown v. Wainwright</u>, 665 F.2d 607, 611 (5th Cir. 1982); <u>see also</u> <u>Gill v. Mecusker</u>, 633 F.3d 1272, 1296 (11th Cir. 2011). Petitioner's subsequent acquiescence and acceptance of assistance from Ms. Suarez constituted a waiver of his <u>Faretta</u> rights and/or abandonment of his initial written invocation of his right to represent himself. Indeed, during the ten-month period between the filing of his pro se motion and his sentencing hearing, Petitioner never made a second request to represent himself, nor did he remind the trial court of his prior request or reiterate his desire to proceed pro se even though he had multiple opportunities to do so.

For these reasons, the Court concludes that the state court's adjudication of this issue was neither contrary to nor an unreasonable application of clearly

established federal law, and it is not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  See 28 U.S.C. § 2254(d); Gill, 633 F.3d at 1296 (holding state court's adjudication of Faretta claim entitled to deference because invocation of right to self-representation was equivocal and the petitioner's conduct indicated a waiver of his Faretta rights). Ground One is due to be denied.

## B. Ground Two

Petitioner argues that appellate counsel was ineffective for failing to challenge on direct appeal the trial court's denial of Petitioner's motion to dismiss, in which he argued an affirmative defense of entrapment. Doc. 1 at 10-18. According to Petitioner, "appellate counsel acted unreasonably by failing to raise this meritorious entrapment claim which had the most reasonable probability of prevailing than all the other grounds raised on direct appeal . . . ." Id. at 17.

Prior to Petitioner's trial, trial counsel extensively argued that the government's involvement in the reverse sting operation that ultimately resulted in Petitioner's arrest was outrageous and moved to dismiss the Information on that basis. Resp. Ex. A at 180-94; Resp. Ex. J at 34-45. At the hearing on the motion to dismiss, and without explanation, the trial court denied the motion. Resp. Ex. J at 45.

Petitioner proceeded to trial, during which the state presented evidence that Petitioner initiated contact with confidential informant James Hall, requesting to purchase half a kilogram of cocaine. Resp. Ex. E at 142, 214. Hall testified that he had known Petitioner for approximately eleven years, and that prior to Hall becoming an informant, Petitioner would regularly call him requesting to purchase drugs. Id. at 217-18, 221. Hall notified Detective Cook about Petitioner's most recent request, and Detective Cook advised Hall and another confidential informant, Sean Peeples, to set up a drug transaction. Id. at 158. Peeples also testified that he had known Petitioner for approximately eleven years, and he was friends with him prior to becoming an informant. Id. at 264. Detective Cook explained that he set the price of the drugs, and at the time of the purchase, the market price for one kilogram of cocaine was $30,000. Id. at 147. As such, he allowed the confidential informants to negotiate a sale with Petitioner for $15,000, consistent with the market price for the amount Petitioner was seeking to purchase. Id.

Through recorded phone conversations played for the jury, Petitioner voluntarily agreed to drive from Georgia to Jacksonville, Florida, to meet Hall and conduct the deal. Id. Per the arrangement, Petitioner was to bring an initial lump-sum payment of $10,000 with the agreement that Petitioner would pay the remaining $5,000 the following week. Id. Detective Cook stated that this payment plan was not uncommon for these types of drug deals. Id. at 158. Hall

19

explained that during the negotiations, Petitioner did not exhibit any signs of hesitation or a desire to back out. Id. at 215-16.

Petitioner then drove to Jacksonville, where he met Hall and an undercover police officer to conduct the deal. Id. at 149, 216. In a shopping center parking lot, Petitioner and Hall got into the undercover officer's vehicle, and Petitioner exchanged approximately $10,000 for the cocaine. Id. at 216, 280-82. An audio recording of the transaction was played for the jury. Id. at 278-80. Immediately after the hand-to-hand exchange, Detective Cook and other police officers stormed the vehicle and arrested Petitioner. Id. at 159, 280-83. Detective Cook read Petitioner his Miranda[6] rights, to which Petitioner verbally stated he understood. Id. at 161. Petitioner then admitted he was in the vehicle to purchase a half of a kilogram of cocaine for approximately $10,000 and that he was planning to return to Jacksonville in a few days to pay the remaining $5,000. Id.

Hall and Peeples also extensively testified about their cooperation with the government and their unrelated pending criminal cases. Hall was arrested in late 2009 for trafficking heroin and conspiracy to traffic. Id. at 212. He immediately indicated a desire to cooperate with police in hopes of receiving a lesser sentence. Id. Police agreed to defer Hall's arrest in exchange for his

_____

[6] Miranda v. Arizona, 384 U.S. 436 (1966).

substantial assistance as a confidential informant; however, police made no promises to Hall during his deferred arrest, nor did Hall enter a plea agreement. Id. at 165, 212-15.

Hall's assistance led to the arrest of Peeples, who was Hall's heroin supplier. Id. at 213. Peeples was arrested on a drug trafficking offense, and he testified that he signed a plea agreement with the state in exchange for substantial assistance. Id. at 267. Per the terms of the agreement, Peeples was to provide information leading to the arrest of three or more people for crimes that would result in a seven-year sentence or higher. Id. at 267. According to Peeples, if he facilitated such arrests, the state would agree to a negotiated sentence between three and fifteen years. Id. If he did not provide assistance, he was facing a maximum sentence between twenty-five and sixty years. Id. at 268. A copy of Peeples's plea agreement was entered into evidence at Petitioner's trial. Id. at 317.

At Petitioner's sentencing hearing, the state advised the trial court that Petitioner, Hall, and Peeples knew each other prior to Petitioner's arrest, because they were all previously incarcerated in the same federal prison in South Carolina. Resp. Ex. C at 461. The state also provided evidence demonstrating that Petitioner had three prior felony convictions, including a conviction for possession with intent to distribute cocaine and a federal conviction for selling cocaine base. Id. at 457-58. Petitioner's trial counsel

attempted to argue for a downward departure sentence based on sentence manipulation regarding the amount of cocaine involved in the offense and the price negotiated by the confidential informants. Id. at 423-43. However, after considering the evidence submitted at trial showing Petitioner initiated the transaction and Petitioner's prior criminal record, the trial court denied the request for a downward departure. Id. at 453-59.

Petitioner now claims that his appellate counsel was ineffective for failing to raise as an argument on direct appeal that the trial court erred in denying the pretrial motion to dismiss based on entrapment. Doc. 1 at 10-18. Petitioner raised an identical claim of ineffective assistance of appellate counsel in his state postconviction petition for writ of habeas corpus filed with the First DCA. Resp. Ex. T. The First DCA denied the claim, issuing a brief opinion stating, "[t]he petition alleging ineffective assistance of appellate counsel is denied on the merits." Resp. Ex. U. As such, there is a qualifying state court decision; and the Court will address this claim in accordance with the deferential standard for federal court review of state court adjudications.

The Court gives considerable deference to appellate counsel's strategic decision of selecting the issue or issues to raise on appeal. The danger of raising weaker issues in a "kitchen-sink" approach is that it detracts from the attention an appellate court can devote to the stronger issues and reduces appellate counsel's credibility before the court. See Miller v. Keeney, 882 F.2d 1428, 1434

(9th Cir. 1989); see also McBride v. Sharpe, 25 F.3d 962, 973 (11th Cir. 1994). Thus, effective appellate attorneys "will weed out weaker arguments, even though they may have merit." Philmore v. McNeil, 575 F.3d 1251, 1264 (11th Cir. 2009); see also Overstreet v. Warden, 811 F.3d 1283, 1287 (11th Cir. 2016). Appellate counsel's failure to raise a meritless or weaker issue does not constitute deficient performance which falls measurably outside the range of constitutionally acceptable performance. See Brown v. United States, 720 F.3d 1316, 1335 (11th Cir. 2013) (citing Jones v. Barnes, 463 U.S. 745, 754 (1983)). Prejudice results only if "the neglected claim would have a reasonable probability of success on appeal." Philmore, 575 F.3d at 1264-65.

After an independent review of the record and the applicable law, the Court concludes that Petitioner's case was not subject to dismissal based on an affirmative entrapment defense. As such, because he has failed to show that the issue of entrapment would have had a reasonable probability of success on direct appeal, Petitioner has failed to demonstrate that he was prejudiced by appellate counsel's failure to challenge the trial court's denial of Petitioner's motion to dismiss. The First DCA's denial of Petitioner's claim of ineffective assistance of appellate counsel was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light

of the evidence presented in the state court proceedings. As such, Ground Two is due to be denied.

Accordingly, it is

**ORDERED AND ADJUDGED:**

1.     The Petition (Doc. 1) is **DENIED** and this case is **DISMISSED WITH PREJUDICE**.

2.     The **Clerk of Court** shall enter judgment accordingly, terminate any pending motions, and close this case.

3.     If Petitioner appeals this Order, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.[7]

---

[7] The Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).  Here, after consideration of the record as a whole, the Court will deny a certificate of appealability.

**DONE AND ORDERED** at Jacksonville, Florida, this 4th day of May, 2020.

TIMOTHY J. CORRIGAN
United States District Judge

Jax-7

C:   Larry David Johnson, # J49413
     Bryan G. Jordan, Esq.